United States District **Court**
Southern District of **Texas**
FILED

OCT 3 0 2003

**Michael N. Milby**
**Clerk of Court**

IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| SALOMON ZACARIAS GREEN VANEGAS<br>Petitioner,<br><br>v.<br><br>A.G. WINFREY, INTERIM FIELD OFFICE DIRECTOR,<br>BUREAU OF IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, and<br>JOHN ASHCROFT,<br>UNITED STATES ATTORNEY GENERAL,<br>Respondents. | C.A. No. **B-03-189** |

## PETITION FOR WRIT OF HABEAS CORPUS
## AND BRIEF IN SUPPORT THEREOF

Salomon Greeen Vanegas files the instant Petition for Writ of Habeas Corpus and Injunctive and Declaratory judgments. Petitioner seeks relief from a final order of removal, entered on September 30, 2003. The plaintiff seeks various forms of declaratory and corresponding injunctive relief, as more fully discussed below.

### I. JURISDICTION

1.　　Petitioner asserts habeas jurisdiction under Title 28, United States Code, ("28 U.S.C."), §2241, to review the order of removal entered against him on September 30, 2003. The petitioner is not presently detained in the custody of the Department of Homeland Security. Respondent Winfrey has administrative control over petitioner's case. Respondent Winfrey may execute the order of removal at any time. Respondents

1

Winfrey and Ashcroft therefore are the appropriate custodians of petitioner for habeas purposes.

## II. THE PARTIES

2.    The petitioner is a native and citizen of Nicaragua who first arrived in the United States in 1987. He became a Lawful Permanent Resident, ("LPR"), of the United States on November 4, 1992 and has resided continuously in the United States for over fifteen years.  Mr. Green is the subject of an administratively final order of removal entered on September 30, 2003.

3.    Respondent Winfrey is the Interim Field Office Director of the San Antonio, Texas, office of the Bureau of Immigration and Customs Enforcement, ("B.I.C.E."). Respondent Ashcroft is the United States Attorney General.

## III. FACTS

4.    The petitioner is a 29 year-old native and citizen of Nicaragua. Mr. Green's spouse, Andrea Green, is a United States citizen, ("USC"). Mr. and Mrs. Green were married in April, 2002, and have a United States citizen son, Solomon Green, Jr. The Greens are expecting another child. The Green family resides in Brownsville, Texas, where Mr. Green is presently employed by Tenet Health, Inc.

5.    On June 10, 1999, in the 105th Judicial District Court for Kleberg County, Texas, Mr. Green entered a plea of guilty to possession of marijuana. Mr. Green was given eight years deferred adjudication, ordered to pay a $6,500 fine, $252 court costs, complete 250 hours community service, and attend counseling.

**Removal proceeding before the United States Immigration Judge**

6.      Removal proceedings began upon issuance of a Notice to Appear, ("NTA"), by the Immigration and Naturalization Service, ("INS"), on June 14, 1999.[1] The INS alleges that Mr. Green is a native and citizen of Nicaragua and an LPR of the United States who is removable pursuant to 8 U.S.C. §1227(a)(2)(B)(i) in that he has been convicted of an offense relating to a controlled substance. The petitioner moved to terminate proceedings, arguing a deferred adjudication is not a conviction under state law, and therefore he is not removable, even in light of his plea of guilty. In support of his position, he reasoned that one who has not been previously afforded any rehabilitative treatment and whose adjudication has been deferred falls within 18 U.S.C. §3607, the Federal First Offender Act, ("FFOA"). Federal law does not consider a finding of guilt for a first offense of simple possession of a controlled substance to constitute a conviction. The petitioner further emphasized whether or not the finding of guilt by a state court judge is withheld and subsequently set aside, 18 USC §3607 remains unchanged. Therefore, the petitioner submitted, he has not been convicted of an aggravated felony. The effect of 18 USC §3607 is not nullified by INA §101(a)(48)(A). Congress still intends to view a first offense of simple possession of a controlled substance for which a defendant has pleaded or been found guilty and adjudication or entry of judgment deferred as not having been convicted "for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, *or for any other purpose.*" 18 USC §3607(b), (emphasis added).

**Decision of the United States Immigration Judge**

---

[1] The INS merged into the newly organized Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, effective March 1st 2003.

3

7.     At an individual hearing on June 28, 2002, the Immigration Judge, ("IJ"), found

the petitioner had been convicted of an aggravated felony within the meaning of 8 USC

§1101(a)(43)(B), and was therefore ineligible for any relief.  Although the IJ did not

specifically mention the decision, *In re Salazar Regino,* 23 I&N Dec. 223, (BIA 2002)

holds that a deferred adjudication in Texas for simple possession of a controlled

substance is a conviction for an aggravated felony, rendering a non-citizen ineligible for

relief in removal proceedings within the 5th Circuit. The rationale supporting *Salazar*

*Regino, supra,* is derived from the application of *dicta* from the 5th Circuit's decision in

*U.S.A. v. Hernández Avalos,* 251 F.3d 505, 506, (5th Cir. 2001), a case which analyzed

the United States Sentencing Guidelines, and found that a single conviction for an offense

relating to a controlled substance is an aggravated felony.

8.     The IJ noted:

> The respondent further argues on equal protection and due process issues. These
> issues are constitutional in nature and this Court does not have any jurisdiction to
> rule over those issues.

Oral Decision of the Immigration Judge, ("OD"), June 28, 2002 at 3.

        After concluding that even relief pursuant to 8 U.S.C. §1229(c) was unavailable,

the IJ ordered the petitioner removed from the United States.

## Appeal to the Board of Immigration Appeals

9.     Petitioner's appeal to the Board of Immigration Appeals, ("BIA"), acknowledged

the new definition of "conviction," as amended by the Illegal Immigration Reform and

Immigrant Responsibility Act of 1996, ("IIRAIRA"), and found at 8 U.S.C.

§1101(a)(48), which states that any finding of guilt by any court is sufficient for purposes

of immigration laws. The petitioner renewed the constitutionally based arguments upon which the IJ commented, and reminded the BIA that when a non-citizen reasonably relies on the state of the law and pleads guilty, the possibility for relief in any future immigration proceeding is certainly an important factor in reaching such a decision. In sum, fair notice of the conduct which subjects one to punishment, and the severity of the consequences as a result of a finding of guilt are required under the due process clause of the 5th amendment to the United States Constitution. *BMW of North America, Inc., v Gore,* 517 U.S. 559, 574 (1996).

10.    The petitioner's appeal to the BIA demonstrated that *Salazar Regino* results in a gross inequity: First, notwithstanding a deferred adjudication, the LPR becomes removable as a result, despite any subsequent action dismissing the cause. Second, the BIA's choice to apply *dicta* from the 5th Circuit's decision in *Hernández Avalos, supra,* forecloses any relief. This combination of effects, counting a deferred adjudication as a conviction, and then counting the conviction as an aggravated felony which renders the LPR unable to apply for discretionary relief places any non-citizen who has been arrested for possession of marijuana in the 5th Circuit in an unfairly precarious position. Mr. Green exhorted the BIA that the consequences imposed upon him and others similarly situated is fundamentally unfair in it's effect. When Mr. Green availed himself of deferred adjudication, he had the reasonable expectation that no negative consequences would flow as a result of the criminal charge. He had no notice that relief would be foreclosed, and the severity of the consequences in immigration proceedings far outstrip the criminal sanction he received. Even though a removal proceeding is civil in nature, the result is fundamentally unfair and violative of due process.  Nevertheless, the BIA

5

affirmed the IJ's decision on September 30, 2003, citing the 5th Circuit decision in *U.S. v. Caicedo Cuero,* 312 F.3d 697 (5th Cir. 2002).

## IV. CAUSES OF ACTION IN HABEAS CORPUS

a.    **VIOLATION OF DUE PROCESS**

11.    This Court has jurisdiction under 28 U.S.C. §2241 to review orders of removal, even though the petitioner did not seek to reopen the BIA's affirmance of the IJ's decision, or file a petition for review at the Fifth Circuit. In *McCarthy v. Madigan,* 503 U.S. 140 (Supreme Court 1992), the United States Supreme Court commented upon the requirement that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. 503 U.S. 140, 144-45. "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." The exhaustion principle acknowledges that the administrative agency charged by Congress retains primary responsibility for the adjudication of those programs. "Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." 503 U.S. 140, 145.

12.    Nonetheless, an exception to the exhaustion prerequisite may exist if there is uncertainty as to the authority of a particular agency to grant the relief requested. In that instance, by-passing an administrative remedy does not violate the exhaustion requirement. Additionally, the Supreme Court found that where the agency has already decided the particular issues for reconsideration, the requirement of administrative review would result in futility. 503 U.S. 140, 148.

13.    Here, the IJ described the petitioner's arguments as "constitutional" in nature. While the BIA may entertain due process and fundamental fairness challenges to procedures as applied, it is established BIA doctrine that the Board will not rule on the constitutionality of the statute which it administers. *Matter of U-M-,* 20 I&N Dec. 327 (BIA 1991), [BIA will not rule whether deportation is double jeopardy]. *But see Matter of Toro,* 17 I&N Dec. 340, (BIA 1980).   The BIA has expressed doubt as to the scope of it's authority to rule on questions of constitutional import. In like manner, agency decisions directly address the questions presented. When all of those factors are considered together, the petitioner did not frustrate the doctrine of exhaustion in filing the instant Petition for Writ of Habeas Corpus instead of first seeking further review by the agency.

14.    It is established law in the Fifth Circuit that the "jurisdiction stripping provisions," found at 8 U.S.C. §1252(a)(2), preclude a petition for review of a final order of removal arising from a criminal offense covered by 8 U.S.C. §1227(a)(2)(B)(i). While the Fifth Circuit has jurisdiction to determine its' own jurisdiction, once the court determines that the order of removal is based on a controlled substance offense,( 8 U.S.C. §1227(a)(2)(B)(i), "the jurisdiction stripping provisions of §1252 clearly apply." *Flores Garza v. INS,* 328 F.3d 797, (5th Cir. 2003). Because the order of removal in this matter was based on the identical provision of law, the Fifth Circuit would have dismissed any petition for review due to lack of jurisdiction. Therefore, the petitioner did not frustrate the doctrine of exhaustion in filing the instant Petition for Writ of Habeas Corpus instead of first filing a petition for review at the Fifth Circuit.

7

15.     The removal order against petitioner violates principles of equal protection. In *Salazar Regino, supra,* the BIA found that a non-citizen who has been granted deferred adjudication for simple possession of a controlled substance and whose case arises within the 5th Circuit has been convicted of an aggravated felony and is ineligible for relief from removal. In the 2nd, 3rd, 4th, 6th, and 7th circuits, a similarly situated non-citizen may eligible for discretionary relief. *In re Yañez García, .*" 23 I&N Dec. 390, (BIA 2002). While an identically situated non-citizen in another jurisdiction may not even be removable, still others may file an application for relief and present evidence of equities and value to the local community and the United States. It violates principles of equal protection, and therefore due process where the BIA abandoned the provisions of federal law which would not find an LPR removable, and further found in *Salazar Regino, supra,* that in the Fifth Circuit a single offense for simple possession of a controlled substance, is a drug trafficking crime for which there is no relief from removal.

**SECOND CAUSE OF ACTION- INJUNCTIVE AND DECLARATORY JUDGMENT**

16.     Executing a removal order can have serious, and in some cases, permanent consequences. Even where the person was not deportable as charged, and deportation results in a miscarriage of justice, it can make it difficult, if not impossible, to set aside the deportation order. *See Lara v. Trominski,* 216 F.3d 487, 494, n.8 (5th Cir. 2000) (Must show that there is a freestanding due process right to be free of 'gross miscarriage of justice' during the immigration process.").

**The retroactive characterization of petitioner's offense as a conviction for an aggravated felony violates Due Process as declared in a series of Supreme Court involving "fair notice."**

17.    Although not punishment for a criminal offense, deportation has long been recognized as a "penalty." *See Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result. Deportation would then become an additional penalty, retroactively attached to the "criminal offense." This, it is submitted, would be a "manifest injustice," and would violate Due Process. *See Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 716 (1974) (retroactive application of a law violates Due Process if it creates a "manifest injustice), and *B.M.W. of North America v. Gore,* 517 U.S. 559, 574 (1996). ("Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty...").

18.    §42.01 of the Texas Code of Criminal Procedure, ("TCCP"), is entitled "Judgment", and states, in relevant part,

"A judgment is the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant. The sentence served shall be based on the information contained in the judgment..." TCCP Art. 42.02 is entitled, "Sentence", and states:  "The sentence is that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law."

19.    8 U.S.C. §1101(a)(48) defines "conviction", with respect to an alien, as

"a formal judgment of guilt of the alien entered by a court or, *if adjudication of guilt has been withheld*, where a judge or jury has found the alien guilty or (1) *the alien has entered a plea of guilty* or nolo contendere or has admitted sufficient facts to warrant a

finding of guilt, *AND* (2) *the judge has ordered some form of punishment*, penalty, or restraint on the alien's liberty to be imposed." (emphases added).

20.    The definition of "conviction" at 8 U.S.C. §1101(a)(48) requires a finding of guilt and some form of sentence or punishment. The petitioner respectfully urges this Court that he has not been convicted because he has never been sentenced, according to Texas law. Therefore he has not suffered a conviction within the meaning of INA 8 U.S.C. §1101(a)(48). Despite the holding by the Fifth Circuit in *Moosa v. INS,* 171 F.3d 994 (5th Cir. 1999), the facts herein presented are distinguishable from those on which the *Moosa* Court based it's ruling.

21.    Moosa was given deferred adjudication for Indecency with a Child, and argued that he had not been convicted within the meaning of the INA. The Fifth Circuit examined the statutory language of at 8 U.S.C. §1101(a)(48) and noted the two prong analysis for a conviction, *Moosa v. INS,* 171 F.3d 994, 999-1000. The Court noted that the applicant served time in jail on work release, had to report to a probation officer every month, and was required to attend counseling, *Moosa v. INS, supra,* at 1004. "This was a punishment," The Fifth Circuit concluded, "and a restraint on his liberty." *Ibid.*

22.    While the petitioner was ordered to pay court costs, a fine, and a fee, the judge never imposed a sentence.  When the petitioner has complied with the conditions, the matter will be dismissed with no sentence as a result of any finding under the statute. The BIA identifies a conviction as an admission, determination, or entry of guilt linked with punishment, *Matter of Roldan,* 22 I&N Dec. 512 (BIA 1999). The petitioner entered a plea of guilty and the court accepted his admission, but unless the court finds that the defendant has committed another offense, no sentence results.  The probationary period

10

imposed satisfied the first prong of the BIA analysis in *Matter of Ozkok*, 19 I&N Dec.

546, (BIA 1988). However, all of the elements necessary for a conviction as defined at 8

U.S.C. §1101(a)(48) are not satisfied as to petitioner because no sentence was imposed as

a result of that admission. The BIA envisions a nexus between finding or admission or

guilt and any court ordered sanction, as did the Fifth Circuit in *Moosa*.

**The language of the United States Supreme Court in *INS v. St. Cyr, supra*, emphasizes that the legal consequences of any action should be evaluated under the law as it existed on the date of it's commission.**

23.     The BIA should have viewed the petitioner's guilty plea under the law as it

existed when it occurred. Even though Congress was specific as to the retroactive effect

of 8 U.S.C. §§1101(a)(48) and 1227(a)(3)(A)(iii), the second prong of the retroactivity

analysis employed in *INS v. St. Cyr, supra*, asks whether applying those definitions

produces an impermissible retroactive effect for aliens who, like petitioner, entered a plea

at a time when the plea would not have rendered them ineligible for relief from removal.

Applications of 8 U.S.C. §§101(a)(48) and 1227(a)(2)(A)(iii) and the elimination of any

possibility of relief for people who entered into plea agreements with the expectation that

they would be eligible for such relief clearly creates liability for events that have already

run their course.

24.     This Court has recently considered consolidated Petitions for Writ of Habeas

Corpus in which the salient legal issues were similar or identical to those presented in the

instant petition. *Laura Estela Salazar Regino, et al v. I.N.S., et al.* No. B-02-45, (S.D.

Tex., Sept.30, 2003). The United States Magistrate who initially reviewed the petitions

recommended granting individual Writs of Habeas Corpus, and remanding the matters to

11

the BIA, "based on a procedural due process violation, in that these petitioners were not given "fair notice" that they would face mandatory deportation with no possibility of relief when they entered their guilty pleas to simple possession of controlled substances years ago." *Laura Estela Salazar Regino, et al v. I.N.S., et al.* No. B-02-45, Magistrate Judge's Report and Recommendation, slip op. at 40, (S.D. Tex Mar. 26, 2003). All claims in the consolidated petitions were ultimately denied when the District Judge found that the Petitioners did not "establish they have a liberty or property interest at stake." *Laura Estela Salazar Regino, et al v. I.N.S., et al.* No. B-02-45, slip op. at 16, (S.D. Tex. Sept. 20, 2003). The District Judge cited *González Torres v. I.N.S.,* 213 F.3d 899, (5th Cir. 2002) and *López de Jesús v. I.N.S.,* 312 F.3d 155, (5th Cir. 2002), in support of the conclusion that a non-citizen has no automatic and undeniable right to a grant of discretionary relief. The District Judge's order equates eligibility for suspension of deportation with long-time LPR status and all of the connective property and familial ties arising from lengthy residence in the United States. The District Judge also repudiated the petitioner's arguments based on substantive due process.

> [T]o the extent that Petitioners cite to substantive due process cases, cited in *Plasencia*, which rejected conclusive presumptions in certain circumstances, Petitioners have not adequately argued why an alien has a fundamental right to live and work in the United States deserving of such heightened scrutiny. Even if such a fundamental right exists, Petitioners have not argued why it is that Congress' broad, plenary authority over immigration matters including decisions about which classes of aliens are admissible and deportable and under what circumstances does not constitute a compelling governmental need, and thus survive heightened scrutiny. *See e.g. I.N.S. v. Chadha,* 462 U.S. 919, 941 (1983); *Fiallo v. Bell,* 430 U.S. 787, 792 (1977).

*Laura Estela Salazar Regino, et al v. I.N.S., et al. supra,* slip op. at 20.

25.     The petitioner respectfully submits that cancellation of removal for certain permanent residents, the relief herein requested, varies significantly from suspension of

deportation, (8 U.S.C. §1182), and relief pursuant to INA §212(d)(11). Those two forms of discretionary relief were considered by the Fifth Circuit in *González Torres v. I.N.S., supra,* and *López de Jesús v. I.N.S., supra,* and the rationale behind those decisions formed part of the analysis employed by this Court in *Laura Estela Salazar Regino, et al v. I.N.S., et al. supra.* Further, the District Judge mischaracterized the focus of petitioner's substantive due process argument therein presented. Specifically, the petitioners did not attempt to conjure a fundamental right to remain with their families in the United States despite any criminal misdeeds, but instead urge that notions of substantive due process establish that they should at least be afforded an administrative hearing and adequate procedures for reasonable appellate review.

26.     In rejecting the procedural due process argument, the District Judge remarked, "Petitioners have not adequately argued why an alien has a fundamental right to live and work in the United States deserving of heightened scrutiny." *Laura Estela Salazar Regino, et al v. I.N.S., et al. supra,* slip op. at 20.  Mr. Green concedes and acknowledges that because he is not a United States citizen he has no fundamental right to remain in the United States. However, because he has been lawfully admitted in permanent resident status, the constitution does require a minimally fair process in the event that the government wishes to revoke his status and remove him.  An opportunity to present evidence of his equities and value to the surrounding community in light of his criminal offense complies with notions of fundamental fairness. Mr. Green emphasizes that if he, and all those similarly situated, had been permitted to apply for relief and applications were then denied as a matter of discretion after consideration upon all the merits presented, any claim to a denial of substantive due process would evaporate.

**The petitioner's equal protection and fair notice arguments should be viewed in light of the Supreme Court doctrine of Substantive Due Process.**

27.    The Due Process Clause of the Fifth Amendment prohibits the interference or impairment of a fundamental right unless the law accomplishes a compelling state interest. Further, the relation between the objective of the law and the method employed to accomplish the state's aim must be necessary, and narrowly tailored to meet that end. If the government may achieve its' goal in a less burdensome way, then a law restricting a fundamental right violates Due Process. *See Moore v. East Cleveland* 431 U.S. 494 (1977).

28.    Choices and decisions concerning marriage, procreation, and raising ones' family implicate fundamental rights. The United States Supreme Court has applied strict scrutiny to laws impinging upon fundamental rights. *See Meyer v. Nebraska* 262 U.S. 390 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510 (1925); *Skinner v. Oklahoma,* 316 U.S. 535 (1942); *Griswold v. Connecticut,* 381 U.S. 479 (1965); *Roe v. Wade,* 410 U.S. 113 (1973).

29.    The law must be drafted to ensure that the government can achieve its' goal in the way that is the least exacting and troublesome to those whose fundamental rights are being restricted by its' enforcement. In *Pierce v. Society of Sisters, supra,* the Supreme Court voided a statute which it held:

> [U]nreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state.

268 U.S. 510, 534-535

30.    Personal autonomy, including the ability to rear one's child and cohabit with one's nuclear family is protected by the Due Process Clause. In *Moore v. East Cleveland, supra*, the United States Supreme Court held that a housing law which separated families was unconstitutional, and noted: "The Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." 431 U.S. 494, 504. They are not specifically enumerated in the Bill of Rights, yet respect for the liberty of the individual and the sanctity of the family are among the traditional values upon which our nation was founded and thrived. They are recognized by the Supreme Court within the doctrine of Substantive Due Process.

> Due process has not been reduced to any formula; its content cannot be determined by reference to any code. The best that can be said is that through the course of this Court's decisions it has represented the balance which our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society. If the supplying of content to this Constitutional concept has of necessity been a rational process, it certainly has not been one where judges have felt free to roam where unguided speculation might take them. The balance of which I speak is the balance struck by this country, having regard to what history teaches are the traditions from which it developed as well as the traditions from which it broke. That tradition is a living thing. A decision of this Court which radically departs from it could not long survive, while a decision which builds on what has survived is likely to be sound. No formula could serve as a substitute, in this area, for judgment and restraint.
> ". . . [T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This `liberty' is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; the right to keep and bear arms; the freedom from unreasonable searches and seizures; and so on. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, . . .

15

and which also recognizes, what a reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.

431 U.S. 494, 501-02, (internal citations omitted).

31.    The petitioner urges this Court that the cumulative effect of counting a deferred adjudication as a conviction, and then finding that simple possession of marijuana is a drug trafficking crime, violates his right to substantive due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. While the United States Congress has plenary power over immigrants, laws which impair a fundamental right, such as the right to raise one's family and cohabit with one's nuclear family, must be accomplished by means narrowly tailored to meet that end. Immigration laws provide that a former LPR who is deported from the United States after having been convicted of an aggravated felony is subject to lifetime banishment from the United States. *See 8 U.S.C. §1182(h)(2).* The purpose of immigration laws are to provide mechanisms by which non-citizens can adapt and flourish in the United States, while protecting the population from any dangerous elements among all the new arrivals. The INA as currently construed by the BIA provides no opportunity for a hearing or consideration of substantial equities. The means employed are not the least exacting and troublesome to those thereby affected. Because the goal of minimizing criminal activities by immigrants may be accomplished in a manner less disruptive to LPR's who have United States citizen family members, counting a deferred adjudication as a conviction, and then finding that simple possession of marijuana is a drug trafficking crime, violates substantive due process.

16

32.     Although its' opinion upheld the right of extended families to cohabit, and struck down a zoning law which impaired that right, the United States Supreme Court could have been discussing immigrant families when it stated:

> Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition. 14 Over the years millions of our citizens have grown up in just such an environment, and most, surely, have profited from it. Even if conditions of modern society have brought about a decline in extended family households, they have not erased the accumulated wisdom of civilization, gained over the centuries and honored throughout our history, that supports a larger conception of the family. Out of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and the satisfactions of a common home. Decisions concerning child rearing, which Yoder, Meyer, Pierce and other cases have recognized as entitled to constitutional protection, long have been shared with grandparents or other relatives who occupy the same household - indeed who may take on major responsibility for the rearing of the children.

431 U.S. 494, 504-05.

33.     In a recent decision the United States Supreme Court held 8 U.S.C. §1226(c) compelling mandatory detention for LPR's convicted of an aggravated felony pending removal proceedings constitutional, and noted:

> It has been settled for over a century that all aliens within our territory are "persons" entitled to the protection of the Due Process Clause. Aliens "residing in the United States for a shorter or longer time, are entitled, so long as they are permitted by the government of the United States to remain in the country, to the safeguards of the Constitution, and to the protection of the laws, in regard to their rights of person and of property, and to their civil and criminal responsibility." *Fong Yue Ting* v. *United States, 149 U.S. 698, 724*, (1893). *The Japanese Immigrant Case, 189 U.S. 86, 100-101,* (1903), settled any lingering doubt that the Fifth Amendment's Due Process Clause gives aliens a right to challenge mistreatment of their person or property.

*Demore v. Kim*, No. 01-1491, (U.S. Sup. Ct. April 29, 2003) at 15.

17

34.     While *Demore v. Kim* found that an LPR may be detained without an individualized bond hearing before an IJ, it also re-emphasized that LPR's should be afforded constitutional protection. Due to the decision of the Fifth Circuit's decision in *United States v. Hernández Avalos,* 251 F.3d 505, 506, (5th Cir. 2001), and the BIA's disinclination to distinguish a finding of aggravated felony for purposes of interpreting the United States Sentencing Guidelines from its' application in removal proceedings, the application of the BIA's ruling in *Salazar Regino,* as applied to Mr. Green, violates long standing tenets of equal protection and due process.   The Supreme Court noted, in *Demore v. Kim,*

> once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders. Such rights include those protected by the First and the Fifth Amendments and by the due process clause of the Fourteenth Amendment. None of these provisions acknowledges any distinction between citizens and resident aliens. They extend their inalienable privileges to all "persons" and guard against any encroachment on those rights by federal or state authority.' " 344 U.S. at 596-597, n. 5 (quoting *Bridges, supra,* at 161). See also *United States* v. *Verdugo-Urquidez,* 494 U.S. 259, 271, (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country");

*Demore v. Kim* at 16.

35.     Mr. Green became a LPR in 1992. He was granted deferred adjudication for a single offense for possession of a controlled substance in 1999. Therefore, Mr. Green could have relied on the BIA's policy of non-deportation for first time controlled substance offenders established by *Matter of Manrique,* 21 I&N Dec. 58 (BIA 1995). In *Laura Estela Salazar Regino, et al v. I.N.S., et al. supra,* this Court noted

> The Fifth Circuit, along with others, has concluded that "while petitioners may have expected that they would be eligible for suspension of deportation, IIRIRA's

amendment limited only their eligibility for discretionary relief; it did not infringe on a right that they possessed prior to enactment.

*Laura Estela Salazar Regino, et al v. I.N.S., et al. supra,* at 16, citing *González Torres v. I.N.S., supra,* and *López de Jesús v. I.N.S., supra.*

36.     Notions of substantive due process do not establish an absolute right of a non-citizen to remain in the United States after lawful permanent residence has been conferred. However, the Supreme Court decisions in *I.N.S. v. St. Cyr, supra,* and *Demore v. Kim, supra,* establish that LPR's may avail themselves of Fifth Amendment's Due Process Clause because they often have significant family and property ties, as well as lengthy periods of lawful residence in the United States. *See Matthews v. Eldridge,* 424 U.S. 319 (U.S. Supreme Court 1976). *González Torres v. INS, supra,* was the case of a non-citizen who had never obtained any lawful status and was found ineligible for suspension of deportation. 213 F.3d 899, 902 (5th Cir. 2000). *Lopez de Jesús v. I.N.S., supra,* concerned an LPR who requested a humanitarian waiver to overcome a ground of inadmissibility due to smuggling activity. 213 F.3d 155, 161-63 (5th Cir. 2002). Mr. Green respectfully submits that his case is substantively and qualitatively different from those relied upon by this Court. He is a long-time LPR, not someone who seeks to regularize his status after a long period of unlawful presence. A hearing has traditionally been available for long-time LPR's who have been rendered removable or inadmissible as a result of contact with the criminal justice system in the United States. *See Matter of Hernández Casillas,* , 20 I&N Dec. 262, (BIA 1990).

37.    The effect of the BIA's rulings in *Salazar Regino, supra* places relief available under federal law in other jurisdictions beyond the reach of Mr. Green, resulting in fundamental unfairness.  When the United States Supreme Court disagreed with the Attorney General's interpretation of the retroactive provisions of the Anti Terrorism and Effective Death Penalty Act of 1996, ("AEDPA"), and IIRAIRA in *INS v. St Cyr, supra,* the Court applied the doctrine of fundamental fairness to allow LPR's who pled guilty in reliance on the availability of a waiver to ameliorate the immigration consequences of those convictions and apply for 212(c) relief. Here, fundamental fairness and revered notions of substantive due process, very recently re-emphasized by the United States Supreme Court in *Demore v. Kim, supra,* require that 18 USC §3607, and all other protections available under federal law to long time LPR's, be equally accessible to Mr. Green.

38.    The BIA's reluctance to follow the precepts of *Roldan Santoyo and Lujan Armendariz v. INS,* 222 F.3d 728, (9th Cir. 2000), finding a deferred adjudication is not a conviction for purposes of federal law due to 18 USC §3607, and then follow the ruling of the Fifth Circuit in *United States v. Hernández Avalos, supra,* spawns another constitutional dilemma. The denial of equal protection is compounded by the denial of substantive due process. The BIA abandoned the provisions of federal law which would not find an LPR removable, and further found in *Salazar Regino, supra,* that in the Fifth Circuit a single offense for simple possession of a controlled substance, is a drug trafficking crime for which there is no relief from removal. There is a penetrating disparity in results created by this combination of effects. While an identically situated

non-citizen in another jurisdiction may not even be removable, still others may file an application for relief and present evidence of equities and value to the local community and the United States. Yet due to the BIA's ruling in *Salazar Regino, supra,* an LPR in the jurisdiction of the Fifth Circuit with over two decades of lawful residence and similar or even more weighty equities, is not even permitted to seek relief. Had Mr. Green not lawfully resided in the United States for so many years, his claim to a denial of substantive due process would admittedly be lessened. If Mr. Green was permitted to apply for relief and his application was denied as a matter of discretion after consideration upon all the merits he may present, his claim to a denial of substantive due process would evaporate.

39.    However, in light of the apparent disparity in outcomes which gives rise to his valid claim to a denial of equal protection, because Mr. Green has lived in the United States for many years and everything he knows and loves is in this country, to deny him a hearing before an IJ is contrary to the notions of substantive due process explicated in *Moore v. East Cleveland, supra* and *Demore v. Kim, supra.*

40.    While the goal of deterring drug abuse by non-citizens is a legitimate governmental function, denying an administrative immigration hearing to a non-citizen arrested for a drug offense is not the least restrictive means of accomplishing those ends. Because the denial of an opportunity to seek relief may result in lifetime banishment from the United States, in effect, the application of the BIA's decision in *Salazar Regino, supra,* thereby results in enormous hardship to citizens of the United States who are family members of those effected LPR's. Cherished judicial doctrine promulgated by the United States Supreme Court must overrule an administrative agency's interpretation of

21

dicta in the Fifth Circuit's decision, because the agency's ruling engenders a violation of equal protection. That denial of equal protection, especially when considered in light of Mr. Green's lengthy residence and extraordinary ties to the United States, amounts to a denial of substantive due process.

41.    Here, the IJ found that Mr. Green is ineligible for cancellation of removal due to changes in the law subsequent to the date he entered a guilty plea. On June 10, 1999, relief from removal would not have been necessary, even if deferred adjudication for possession of marijuana were considered a conviction within the meaning of 8 U.S.C. §1101(a)(48). 18 U.S.C. §3607, the Federal First Offender Act, ("FFOA"), establishes that a single offense for simple possession of a controlled substance is not considered a conviction for purposes of federal law. Therefore, considerations of fair notice, reasonable reliance, and settled expectations mandate that cancellation relief should not be eliminated for LPR's who were granted deferred adjudication for simple possession prior the decision in *Salazar Regino, supra.*

42.    A functional, commonsense judgment is required in order to ascertain whether a statute creates an impermissible retroactive effect. *Martin v. Haddiz,* 527 U.S. 343 (1999). Retroactive application of the ruling of the BIA in *Salazar Regino, supra,* as applied to Mr. Green, increases his liability for past conduct and erases any settled expectations he may have had concerning his immigration status on the date he entered a plea of guilty. The fundamental fairness analysis upon which *St. Cyr* is based is applicable to Mr. Green, because reliance on the immigration laws was part of the calculus in deciding whether or not to enter a plea.

WHEREFORE, it is urged that the Court grant the following relief:

1.      That the Writ of Habeas Corpus issue, and

2.      The removal order be vacated, and the petitioner's case be remanded to the BIA

for further proceedings consistent with the principles articulated herein;

3.      That respondents Winfrey and Ashcroft be enjoined from executing the order of

removal or changing Mr. Green's custody status; and

4.      That the Court award such other and further relief as the Court deems just and

appropriate under all of the circumstances.

Respectfully submitted,

Jodilyh M. Goodwin, Esq.
1322 East Tyler
Harlingen, Texas, 78550
956-428-7212
956-428-7360(FAX)
Federal Id: 20102
Texas State Bar: 00793835


**VERIFICATION**

I, Jodilyn M. Goodwin, certify that I am familiar with the facts as stated above, and that they are true and correct to the best of my knowledge and belief.


Jodilyn M. Goodwin, Esq.

**Certificate of Conference**

I, Jodilyn M. Goodwin, certify that on October 30th, 2003, I conferenced with SAUSA Lisa Putnam and advised her of the filing of this writ on this day.

Jodilyn M. Goodwin, Esq.

**CERTFICATE OF SERVICE**

I, Jodilyn M. Goodwin, certify that today, October 30 2003, a copy of the petition for writ of habeas corpus, was served upon SAUSA Lisa Putnam, by hand delivery to 1717 Zoy Street, Harlingen, Texas, 78551.

Jodilyn M. Goodwin, Esq.

24